UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Sysco Minnesota, Inc.,                                      Civ. No. 17-5162 (PAM/BRT)

           Plaintiff,

v.                                            **MEMORANDUM AND ORDER**

Teamsters Local 120,

           Defendant.

This matter is before the Court on the parties' cross-Motions for Summary Judgment. For the following reasons, Plaintiff's Motion is granted and Defendant's Motion is denied.

**BACKGROUND**

In the late afternoon of Thursday, November 16, 2017, International Brotherhood of Teamsters Local 41 began a one-day picket at Plaintiff's Sysco Minnesota, Inc.'s food distribution center in Mounds View, Minnesota. But Local 41 does not represent Sysco Minnesota's employees and had no grievance with Sysco Minnesota. Rather, Local 41 represents employees at a different Sysco facility in Kansas City, Missouri, owned by Sysco Minnesota's sister company, Sysco Kansas City, Inc. Both Sysco Minnesota and Sysco Kansas City are subsidiaries of Sysco, Inc., but are separately owned and operated.

Nearly all of the members of Defendant Teamsters Local 120, representing production, warehouse, and maintenance employees at the Mounds View facility, refused to cross Local 41's picket line, which was timed to interfere with both the Thursday evening

and Friday morning shifts. As a result, Sysco was unable to make its food deliveries to commercial customers preparing for the upcoming Thanksgiving holiday. Sysco claims to have suffered more than $1.2 million in lost profits and lost customers as a result of the strike. Local 120 did not have any labor grievance with Sysco, and indeed had signed a new four-year collective bargaining agreement ("CBA") several months before the incident.

Sysco brought this suit claiming that Local 120's participation in the strike breached the parties' collective bargaining agreement. The parties' CBA contains two relevant provisions. Article 23 provides that "there shall be no lockout, strike or any other interference with the operation of the business during the life of this Agreement." (Am. Compl. Ex. 1 ("CBA") (Docket No. 14-1) at 17.) Article 24 also provides that "no employee shall be requested to go through a primary picket line where a union is on primary strike." (Id.)

The parties have now cross-moved for summary judgment. Sysco contends that there are no genuine issues of fact that Local 120 violated Article 23 and is therefore liable for Sysco's unrebutted damages. Local 120 argues that Sysco has failed to exhaust its arbitral remedies under the CBA and asks the Court to stay the matter pending arbitration. Article 22 of the CBA establishes a grievance procedure, including arbitration with the Federal Mediation and Conciliation Service, for "any controversy, complaint or dispute arising as to the interpretation or application or of the compliance with any provisions of" the CBA. (Id. at 16.) In the alternative, Local 120 contends that the undisputed evidence establishes that this was a "sympathy strike" that is authorized under Article 24.

2

**DISCUSSION**

Summary judgment is proper if there are no disputed issues of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The Court must view the evidence and inferences that "may be reasonably drawn from the evidence in the light most favorable to the nonmoving party." Enter. Bank v. Magna Bank of Mo., 92 F.3d 743, 747 (8th Cir. 1996). The moving party bears the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). A party opposing a properly supported motion for summary judgment may not rest on mere allegations or denials, but must set forth specific facts in the record showing that there is a genuine issue for trial. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986).

**A.   Arbitration**

Local 120 contends that the case should be dismissed for Sysco's failure to exhaust its administrative remedies under the CBA. Sysco argues that Local 120 has waived its right to arbitration by litigating this matter for eight months, including through extensive discovery, before raising the arbitration issue.

There is no dispute that a party may waive its right to arbitration if it acts inconsistently with that right and the other party suffers prejudice as a result. Lewallen v. Green Tree Servicing, L.L.C., 487 F.3d 1085, 1090 (8th Cir. 2007). "A party acts inconsistently with its right to arbitrate if the party [s]ubstantially invoke[s] the litigation machinery before asserting its arbitration right." Id. (quotation omitted). Examples of a party substantially invoking litigation machinery include engaging in extensive discovery

3

or failing "to move to compel arbitration and stay litigation in a timely manner." Id. "To safeguard its right to arbitration, a party must 'do all it could reasonably have been expected to do to make the earliest feasible determination of whether to proceed judicially or by arbitration.'" Id. at 1091 (quoting Cabinetree of Wis., Inc. v. Kraftmaid Cabinetry, Inc., 50 F.3d 388, 391 (7th Cir. 1995)).

Any doubts about waiver must be resolved in favor of arbitration. Phillips v. Merrill Lynch, Pierce, Fenner & Smith, 795 F.2d 1393, 1396 n.9 (8th Cir. 1986). Further, delay in and of itself is not sufficient to establish prejudice. Stifel, Nicolaus & Co. v. Freeman, 924 F.2d 157, 159 (8th Cir. 1991).

Local 120 has waived its right to pursue arbitration. Although it raised arbitration as a defense in its Rule 26(f) report early in this case, Local 120 has not attempted to compel Sysco to arbitrate this dispute. Indeed, Local 120's response to Sysco's Motion argues the merits before offering arbitration as a second alternative. This does not constitute doing all it reasonably could have been expected to do to secure its arbitration rights. Local 120's Motion on this point is denied.

**B.     Breach of Contract**

Local 120 contends that it did not violate the CBA because Article 24 protects Union workers from repercussions if they refuse to cross "a primary picket line where a union is on primary strike." (CBA at 17.) According to Local 120, the Local 41 strike was a primary strike that was extended from Local 41's facility in Missouri to the facility in Minnesota. Sysco argues that the CBA's use of the term "primary" limits the protection to strikes by other unions at the unionized workers' location and does not cover sympathy

4

strikes.

The Labor-Management Relations Act ("LMRA") makes specific reference to "primary" strikes and "primary" pickets in 29 U.S.C. § 158(b)(4)(B), which provides that labor actions against entities for whom a union is not a certified bargaining representative are unlawful, except primary strikes or primary picketing. Although there is a dearth of caselaw on the subject, those cases discussing the meaning of "primary" in this section indicate that "primary" does not apply to strikes such as the one at issue here. See, e.g., Nat'l Woodwork Mfrs. Ass'n v. N.L.R.B., 386 U.S. 612, 620 (1967) (holding that union employees' refusal to install third-party manufacturer's product was not prohibited under § 158(b)(4)(B), because it was an action "pressuring the [union members'] employer for agreements regulating relations between [the employer] and his own employees"); Retail Clerks Int'l Union & Retail Store Emp. Union, Local 655 v. Quick Shop Mkts., Inc., 604 F.2d 581, 589 (8th Cir. 1979) (nothing that strike against franchisers was "the paradigm of primary activity" because union "sought recognition and bargaining agreements with the franchisers"). Local 120 does not disagree, describing the work stoppage here as an "extension" of Local 41's primary strike rather than as a primary strike.

Local 120 also contends that the action here was a sympathy strike. The National Labor Relations Act ("NLRA") protects the right of unionized workers to engage in sympathy strikes. 29 U.S.C. § 7; see also John Morrell & Co. v. Local Union 304A of United Food & Commercial Workers, AFL-CIO, 913 F.2d 544, 551 (8th Cir. 1990) (noting that § 157 "generally grants employees the right to engage in sympathy strikes in support of a lawful strike by another union"). Local 120 argues that, unless the CBA clearly and

unambiguously waives employees' sympathy-strike rights, the strike here was lawful and did not violate the CBA. See Amcar Div., ACF Indus. Inc. v. N.L.R.B., 641 F.2d 561, 566 (8th Cir. 1981).

Here, however, the CBA does clearly and unambiguously waive Local 120's right to engage in sympathy strikes. The Court must read the CBA as a whole. Article 23 prohibits any "strike or any other interference with the operation of the business." Article 24 modifies this prohibition to allow Local 120 to honor "primary" strikes. Having essentially conceded that the strike at issue was a sympathy strike, not a primary strike, Local 120 cannot escape the CBA's prohibition on any non-primary-strike work stoppages.

The parties invite the Court to examine their bargaining history, with each party contending that this history supports their interpretation of Articles 23 and 24. But while the Court must "look to the language of the contract, the structure of the contract, the bargaining history, and any other relevant conduct of the parties that shows their understanding of the contract," Amcar, 641 F.2d at 567, the parties' bargaining history here is, at best, contradictory. And regardless of bargaining history, the language of the CBA is subject to only one interpretation: any work stoppage that is not a primary strike is prohibited.

Because Local 120 violated Article 23's strike prohibition, it is liable for all damages that flow from that breach. See Williams v. Nat'l Football League, 582 F.3d 863, 873 (8th Cir. 2009) (noting that suit under the LMRA for violation of CBA is a suit for breach of contract); see also Lesmeister v. Dilly, 330 N.W.2d 95, 103 (Minn. 1983) (a plaintiff may recover "damages sustained by reason of the breach [of contract] which arose

naturally from the breach or could reasonably be supposed to have been contemplated by the parties when making the contract as the probable result of the breach").

Sysco submitted extensive evidence regarding lost profits and lost customers. Sysco's expert witness calculates Sysco's total damages as $1,238,315. (Douglas Decl. Ex. W (Docket No. 49).) Local 120 has not rebutted this evidence or offered an alternative damages model for the Court to use in calculating Sysco's damages here. Indeed, Local 120's only argument in this regard is that it did not violate the CBA so no damages are owed. The Court disagrees, however. It is Local 120's burden in opposing a properly supported summary-judgment motion to set forth specific facts in the record that show a genuine dispute. Local 120 has failed to do this, and an award of damages in the amount Sysco requests is appropriate. See, e.g., Satcher v. Univ. of Ark. at Pine Bluff Bd. of Trs., 558 F.3d 731, 735 (8th Cir. 2009) ("[F]ailure to oppose a basis for summary judgment constitutes waiver of that argument.").

**CONCLUSION**

Accordingly, **IT IS HEREBY ORDERED that**:

1. Plaintiff's Motion for Summary Judgment (Docket No. 37) is **GRANTED**;
2. Defendant's Motion for Summary Judgment (Docket No. 39) is **DENIED**; and
3. Plaintiff is entitled to judgment in the amount of $1,238,315.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Dated:  October 26, 2018

*s/ Paul A. Magnuson*
PAUL A. MAGNUSON
United States District Court Judge